Filed 7/11/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS, <br><br> Petitioner, <br><br> v. <br><br> SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, <br><br> Respondent; <br> ———————————— <br> LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al., <br><br> Real Parties in Interest. | B280676 <br><br> (Los Angeles County <br> Super. Ct. No. BS166063) |

ORIGINAL PROCEEDINGS in mandate. James C. Chalfant, Judge. Petition granted in part, denied in part.

Green & Shinee, Richard A. Shinee, Elizabeth J. Gibbons, and Emily B. Suhr for Petitioner.

Frederick Bennett for Respondent.

Liebert Cassidy Whitmore, Geoffrey S. Sheldon, Alex Y. Wong, and James E. Oldendorph, Jr. for Real Parties in Interest.

––––––––––––––––––––––

## INTRODUCTION

The primary issue in this case is whether the nearly 40-year-old California statutory scheme that governs discovery of peace officer personnel records, when applied to criminal cases, violates due process and is therefore unconstitutional.

Petitioner, the Association for Los Angeles County Deputy Sheriffs (ALADS), is the union that represents non-supervisory Los Angeles County Sheriff's deputies. Real party in interest, Jim McDonnell, is the duly elected Sheriff of Los Angeles County (real party). Other real parties in interest include the Los Angeles County Sheriff's Department (LASD), Los Angeles County, and Does one through 50 (collectively real parties).

In *Brady v. Maryland* (1963) 373 U.S. 83, 87 (*Brady*), the United States Supreme Court held that constitutional due process creates an affirmative obligation on the part of the prosecution, whether or not requested by the defense, to disclose all evidence within its possession that is exculpatory to a criminal defendant. Exculpatory evidence under *Brady* includes impeachment evidence. (*Giglio v. United States* (1972) 405 U.S. 150, 153–155 (*Giglio*).) The prosecution's disclosure obligation under *Brady* extends not only to evidence in its immediate possession, but also to evidence in the possession of other members of the prosecution team, including law enforcement. (*In re Steele* (2004) 32 Cal.4th 682, 697, citing *Kyles v. Whitley* (1995) 514 U.S. 419, 437.)

2

Eleven years after *Brady*, the California Supreme Court, in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 537 (*Pitchess*), held that under certain circumstances, and upon an adequate showing, a criminal defendant may discover information from a peace officer's otherwise confidential personnel file that is relevant to his or her defense.  The California Legislature eventually codified what became known as *Pitchess* motions in Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045 (collectively, the *Pitchess* statutes). (*People v. Mooc* (2001) 26 Cal.4th 1216, 1219–1220 (*Mooc*).)[1] Generally speaking, the *Pitchess* statutes require a criminal defendant to file a written motion that establishes good cause for the discovery sought.  If such a showing is made, the trial court then reviews the law enforcement personnel records in camera with the custodian, and discloses to the defendant any relevant information from the personnel file.  (*Mooc*, at p. 1226.)

Absent compliance with these procedures, peace officer personnel records, as well as information from them, are confidential and shall not be disclosed "in any criminal or civil proceeding[.]"  (§ 832.7, subds. (a) & (f).)  Records that cannot be disclosed absent compliance with the *Pitchess* procedures include the names or identities of peace officers to the extent such a disclosure also links the officers to disciplinary investigations in their personnel files.  (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1297–1299 (*Copley Press*); accord *Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 71–73 (*Long Beach*); *Commission on Peace Officers Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 295, 298–299

---

[1]     All subsequent statutory references are to the Penal Code, unless otherwise designated.

3

(*POST*).)  Prosecutors do not have a superior right of access to law enforcement personnel files, and must also comply with the *Pitchess* statutes to obtain information from them.  (*People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696, 714 (*Johnson*).)

In this case, the LASD created a so-called "*Brady*" list of deputies whose personnel files contain sustained allegations of misconduct allegedly involving moral turpitude or other bad acts relevant to impeachment.  The LASD proposed to disclose that list to the district attorney, as well as to other prosecutorial agencies that handle LASD investigations, so that prosecutors in individual cases could file *Pitchess* motions to discover the underlying misconduct or advise the defense of the disclosure so the defense could file its own *Pitchess* motion.  ALADS opposed disclosure of the *Brady* list and filed the immediate action.  ALADS' lawsuit seeks, in part, an injunction that prohibits disclosure of the list or any individual on the list to anyone outside the LASD, including prosecutors, absent complete compliance with the *Pitchess* statutes described above.

After full briefing, the trial court filed a thorough and lengthy written tentative ruling.  After oral argument, and consistent with that tentative, the court issued a preliminary injunction which prohibits general disclosure of the *Brady* list to the district attorney or other relevant prosecutors.  Consistent with *Copley Press, POST,* and *Long Beach,* the trial court determined that such a disclosure, because it identifies administratively disciplined deputies by name in the absence of a properly filed, heard, and granted *Pitchess* motion, violates the *Pitchess* statutes.

The injunction, however, expressly allows disclosure of individual deputies from the list to prosecutors, in the absence of

4

compliance with *Pitchess* statutes, so long as any disclosed deputy is also a potential witness in a pending criminal prosecution. The trial court acknowledged that such a disclosure also violates the *Pitchess* statutes. The trial court, however, held that a filed criminal case triggers *Brady* and that the LASD, as part of the prosecution team, then has a "*Brady* obligation" to disclose exculpatory evidence in its possession. Because of this obligation, the LASD, in the language of the trial court's injunction, "may" notify the prosecutor—in the absence of a fully litigated and granted *Pitchess* motion—that the identified deputy has a founded administrative allegation of misconduct relevant to his or her credibility.

The trial court's finding that, because of its "*Brady* obligation," the LASD "may" violate the *Pitchess* statutes' disclosure prohibition, is, in our opinion, identical to finding that the *Pitchess* statutes' disclosure prohibition is unconstitutional in the particular context of a filed prosecution wherein a *Brady* list deputy is a witness. There is simply no lawful way judicially to approve a violation of state law unless *compelled* to do so by a higher authority: in this case, the United States Constitution as construed in *Brady*. Also, *Brady* disclosure is an affirmative, sua sponte, *obligation* of the prosecution team, meaning the prosecution is required to turn over all exculpatory information in its possession to the defense whether or not the defense requests it. Therefore, to the extent *Brady* creates a disclosure obligation that overrides *Pitchess* confidentiality, it is mandatory rather than permissive, no matter how the injunction itself is worded. And, if *Brady* compels the LASD to violate state law in this fashion, by disclosing the identity of a *Brady* list deputy in the absence of a fully litigated and granted *Pitchess* motion where

5

a deputy is also a witness in a filed prosecution, then it compels every state and local law enforcement agency in California to do the same under the same or similar circumstances.[2]

---

[2] The concurring and dissenting opinion in this case (hereinafter "dissent") contends that we have mischaracterized the trial court's ruling and created a constitutional issue where none exists. The dissent asserts that the trial court "harmonized" *Brady* and *Pitchess* rather than found them in contradiction. (Conc. & dis. opn. *post*, at pp. 2–3.) We disagree.

In its written tentative ruling, after reviewing *Copley Press, POST,* and *Long Beach,* the trial court summarized its conclusion: "The clear import of *Copley Press, POST,* and *Long Beach* is that the names of peace officers are confidential and not subject to disclosure absent a *Pitchess* motion when connected or linked with employee discipline and investigation of complaints concerning an employee." Later in the tentative, the court reiterated this position, but added its conclusion regarding the obligation created by *Brady*: "Petitioner is correct that the names of peace officers are confidential and not subject to disclosure absent a *Pitchess* motion when connected or linked with the officers' discipline under *Copley Press, POST,* and *Long Beach.* [Citation.] These names cannot be disclosed to the District Attorney absent a *Brady* obligation to do so."

Thus, in its tentative, the trial court expressly acknowledged that disclosing the identity of a deputy from the *Brady* list to the district attorney in the absence of a litigated and granted *Pitchess* motion violates the *Pitchess* statutes. Nevertheless, the court then approved of that disclosure, and hence the *Pitchess* violation it creates, so long as the *Brady* obligation has been triggered by a filed prosecution involving a deputy from the list as a witness. As mentioned above, this is no different from saying the *Pitchess* procedures that prohibit identifying a deputy connected to a disciplinary investigation are unconstitutional and therefore must be ignored when a *Brady* list deputy is a potential witness in a filed prosecution. Thus, we

6

The affirmative disclosure obligation of the prosecution required by *Brady* and constitutional due process have now coexisted with a criminal defendant's good cause burden under the *Pitchess* statutes for nearly 40 years. In that time frame, no reported case that we are aware of has found *Pitchess* or the *Pitchess* statutes to contravene *Brady* and thus violate the United States Constitution. In this case, real parties ask us to uphold the trial court's injunction. As explained above, to do so would require us to find the *Pitchess* statutes unconstitutional insofar as they prohibit, absent compliance with their specific procedures, disclosure to prosecutors of deputies from the *Brady* list who are also potential witnesses in a pending criminal prosecution. ALADS disagrees that *Brady* and constitutional due process compel disclosure in the absence of compliance with *Pitchess,* even if the deputy is a potential witness in a pending criminal prosecution. ALADS seeks an order commanding the trial court to strike language that permits such disclosure from the injunction.

While we understand the appeal of a procedure intended to streamline the disclosure of information that guarantees a criminal defendant's right to a fair trial, we do not write on a blank slate guided only by policy concerns. Both our Supreme Court and at least one Court of Appeal have examined the constitutionality of *Pitchess* and the *Pitchess* statutes in light of *Brady* and found no constitutional infirmity. It is our obligation to follow precedent, whether or not we agree with it; we have no authority, as an intermediate appellate court, to ignore precedent, jump ahead of our Supreme Court, and create new

---

believe that the constitutional issue addressed in this opinion is squarely before us.

law.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity Sales*).)

Our review of the relevant cases convinces us that the current state of the law supports ALADS.  We therefore grant the relief, described above, that ALADS seeks.

## FACTUAL HISTORY

Prior to October 14, 2016, the LASD convened a Commander's Panel to review individual deputy personnel files. Based upon this review, the panel identified approximately 300 individual deputies who had administratively founded allegations of misconduct involving moral turpitude, conduct which might be used to impeach the deputy's testimony in a criminal prosecution. The categories of misconduct upon which the panel based its decisions were administratively founded violations of various sections of the Sheriff's Manual of Policy and Procedures: (1) Immoral Conduct (§§ 3-01/030.07), (2) Bribes, Rewards, Loans, Gifts, Favors (§§ 3-01/030.75), (3) Misappropriation of Property (§§ 3-01/040.40), (4) Tampering with Evidence (§§ 3-01/040.65), (5) False Statements (§§ 3-01/040.70), (6) Failure to Make Statements and/or Making False Statements During Departmental Internal Investigations (§§ 3-01/040.75), (7) Obstructing an Investigation/Influencing a Witness (§§ 3-01/040.76), (8) False Information in Records (§§ 3-01/100.35), (9) Policy of Equality—Discriminatory Harassment (§§ 3-01/121.20), (10) Unreasonable Force (§§ 3-01/030.10), and (11) Family Violence (§§ 3-01/030.16).

In order to comply with what it believed to be its obligations under *Brady* and *Johnson*, the LASD proposed to send a "*Brady* list" of these deputies, identified by name and serial number only, to the various prosecutorial agencies that

handle cases investigated by the LASD. The list would identify the deputy as having at least one founded violation of the above categories of misconduct in his or her personnel file. In the event such a deputy was or became a witness on a filed or to be filed prosecution, the prosecutor could (1) make a motion pursuant to *Pitchess* and Evidence Code sections 1043 and 1045, to discover the conduct underlying the deputy's inclusion on the list, or (2) provide the information disclosed by the LASD to the defense so it could make its own *Pitchess* motion. (*Johnson, supra*, 61 Cal.4th at pp. 715–716.)

On October 14, 2016, the LASD sent letters to all affected deputies notifying them of this proposed policy. The letter advised the affected deputy that he or she had a founded allegation of misconduct in his or her personnel file, and that his or her name and serial number would therefore be disclosed to the district attorney, as well as other relevant prosecutorial agencies, in order to comply with *Brady*. The letter affirmatively stated that records of the investigation itself, as well as the deputy's personnel file, would not be disclosed absent the appropriate *Pitchess* motion and corresponding court order. The letter also warned of the possibility of assignment transfers, in the event the LASD determined such transfers were necessary to protect the integrity of criminal investigations in light of the disclosures. If the LASD determined such transfers were necessary, the letter advised that proper notice and a hearing would be given, and that "[a]ll due process rights afforded by federal, state, and local law, as well as any applicable union memorandum of understanding (MOU)," would be followed.

The letter also advised any affected deputy who believed his or her name was improperly included on the list to notify

9

LASD Captain Gregory Nelson, in writing, within 12 days. In response to this request, ALADS sent letters on behalf of approximately 92 so-affected deputies.

In a separate declaration, LASD Captain Nelson provided further details of the proposed LASD *Brady* list policy. The declaration reiterated that only names and serial numbers of affected deputies would be disclosed. Details of investigations or portions of the deputies' personnel files would only be disclosed after a formal *Pitchess* motion and accompanying court order. The LASD would not take any punitive or disciplinary action against any affected deputy, other than that already imposed for the sustained allegations. The LASD, though, was considering a number of options, including the possibility of assignment changes or restriction to specific duties, to mitigate problems that might arise because of the disclosures and the consequent impaired credibility of any affected deputy. Such options, if executed, would not be punitive, but for the purpose of protecting the integrity of existing or future criminal investigations. Any option utilized, including transfers or restriction of duties, would not result in reduction of salary, rank, or bonus pay. Any affected deputy would be given notice of the change, an opportunity to obtain representation, and a hearing. All due process rights, under federal, state, or local law would be followed at the hearing, and any union MOU would also be honored.

Additionally, Captain Nelson's declaration clarified that any deputy whose founded allegations were eventually overturned or not proven during an appeal to the Los Angeles County Civil Service Commission would not be included on the proposed *Brady* list.

**PROCEDURAL HISTORY**

## I.     ALADS' Petition/Complaint in the Trial Court

On November 10, 2016, ALADS filed its petition for writ of mandate and complaint for temporary restraining order, preliminary injunction, and permanent injunction in the trial court.  The petition and complaint allege three causes of action: (1) Code of Civil Procedure section 1085 (writ of mandate), (2) Government Code section 3309.5 (the enforcement section of the Public Safety Officers Procedural Bill of Rights Act (POBRA), Gov. Code, § 3300 et seq.), and (3) Code of Civil Procedure sections 526 and 527 (injunctive relief).

Overall, the petition seeks a writ of mandate and injunction compelling real parties in interest to comply with the provisions of section 832.5 et seq. (maintenance, use, and confidentiality of peace officer personnel files), Evidence Code section 1043 et seq. (*Pitchess* motions), and POBRA, by *not* (1) disclosing the *Brady* list or the identity of any individual deputy on the list to the district attorney or any other prosecutorial agency without a court order obtained pursuant to *Pitchess* and the *Pitchess* statutes; (2) maintaining in any affected deputy's personnel file the letter mailed October 14, 2016, or any similar letter; (3) taking any punitive action, such as transfer or restriction of duties against any deputy identified on the *Brady* list; (4) placing any deputy on the *Brady* list based upon disciplinary action taken over one year after notice to the deputy of the alleged misconduct; (5) placing any deputy on the *Brady* list based upon disciplinary action that was overturned or found not to be proven during an appeal by the deputy to the Los Angeles County Civil Service Commission; and (6) placing any deputy on the *Brady* list

11

without first providing the deputy with an opportunity for administrative appeal.

After ALADS filed the petition, both sides stipulated that the *Brady* list would not be disclosed prior to the trial court ruling on ALADS' request for a preliminary injunction. Prior to oral argument, the trial court posted a lengthy and thorough written tentative ruling that became, in large part, the formal written order partially granting ALADS' request for a preliminary injunction.

## II. The Trial Court's Tentative Ruling

### A. *Brady* and *Pitchess*

In its tentative, the trial court observed that real parties have a statutory obligation to protect the confidentiality of peace officer personnel records. (§§ 832.7, 832.8.) The court also noted that, as a statutory matter, such records cannot be disclosed to any third party (including prosecutors) absent compliance with *Pitchess* and Evidence Code section 1043 et seq. Further, even the identity of a peace officer is confidential and not subject to disclosure when connected or linked to employee discipline or investigation of complaints against the officer. (*Copley Press, supra*, 39 Cal.4th at pp. 1298–1299.)

The trial judge then contrasted these statutory confidentiality obligations with the federal constitutional disclosure obligations of *Brady* and the cases that followed it. Pursuant to *Brady,* the prosecution has an affirmative obligation to turn over exculpatory evidence whether or not there is a motion by or request from the defense. (*Johnson, supra*, 61 Cal.4th at p. 709.) That affirmative obligation extends to others acting on the prosecution's behalf (the prosecution team). The prosecution team includes law enforcement. (*Kyles v. Whitley*

12

(1995) 514 U.S. 419, 437; *Johnson,* at p. 709.)  Exculpatory evidence includes impeachment evidence.  (*Strickler v. Greene* (1999) 527 U.S. 263, 281–282; *Johnson,* at p. 710.)

The trial court then concluded that the LASD's plan to circulate, generally, a *Brady* list of its deputies to the district attorney and other prosecutorial agencies runs afoul of *Pitchess* and the statutes protecting confidentiality of law enforcement personnel files.  Further, the court concluded, such a practice is not constitutionally compelled by *Brady*, because the LASD's proposed disclosure is not tied to particular deputies involved as potential witnesses in an actual case against a particular defendant.  Although, the court concluded, the LASD is a part of the prosecution team subject to *Brady's* disclosure obligations, those obligations are triggered only where there is a filed criminal prosecution against a particular defendant and a deputy named on the list is a potential witness in the case.  In sum, the trial court observed that "[t]he [LASD] simply is not part of the prosecution team, and is not acting on the prosecution's behalf, in providing the District Attorney a *Brady* list not tied to a particular prosecution.  This is obvious from the fact that there is no *Brady* duty where there is no prosecution."

Ultimately, the trial court concluded that the LASD is entitled to prepare its own internal *Brady* list, but is constitutionally required, under *Brady*, to disclose deputies from that list to the district attorney (or other relevant prosecutor) only when the deputies are involved as witnesses in an actual criminal prosecution.  Otherwise, the *Pitchess* statutes prohibit disclosure, absent compliance with their procedures.  When the LASD makes a constitutionally compelled disclosure outside of *Pitchess*, the prosecution can file its own *Pitchess* motion to

13

obtain the personnel file and investigation, and then disclose to the defense whatever *Brady* requires, or simply notify the defense of the disclosure so the defense can file its own *Pitchess* motion. Either option satisfies the prosecution team's *Brady* obligations. (*Johnson, supra*, 61 Cal.4th at pp. 715–716.)

Essentially, the trial court held that when a deputy on the list is a potential witness in a pending prosecution, *Brady* creates a federal constitutional disclosure obligation that overrides the state-created confidentiality restrictions of *Pitchess* and the *Pitchess* statutes. When a deputy on the list is not involved as a witness in a particular filed prosecution, however, the *Brady* disclosure obligation is not triggered, and the LASD cannot violate its statutory confidentiality obligation by disclosing names from the list to outside prosecutors in the absence of a properly filed, heard, and granted *Pitchess* motion.

Based upon its analysis, the trial court concluded that ALADS was likely to succeed on the merits in terms of preventing the wholesale disclosure of the entire *Brady* list to the district attorney, but was not likely to succeed in terms of preventing disclosure of individual deputies from the list when such deputies were witnesses in filed prosecutions. The trial court also concluded that general disclosure of the list would cause irreparable harm to the reputations of the deputies on the list, while an order enjoining such disclosure would cause no comparable harm to real parties.

**B.     Government Code Section 3303 et seq. (POBRA)**

The trial court also addressed ALADS' claim that the possible transfer or restriction of duties of deputies on the *Brady* list violates POBRA.

14

First, the trial court explained that pursuant to Government Code section 3305.5, the LASD and other real parties have a statutory obligation not to take punitive action against a deputy just because his or her name has been placed on a *Brady* list.  Punitive action, as defined in POBRA, is limited:  to be punitive, the employer's action must be a personnel action that is disciplinary in nature.  (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680–681.)  A transfer is not necessarily disadvantageous to a peace officer and is punitive in nature only if it occurs for the purpose of punishment.  (*Id.* at p. 683.)  If there is no indication that the agency intends to punish the officer through a transfer, a court cannot deem the transfer punitive because it is aimed at addressing an officer's inability to perform a particular assignment.  (*Los Angeles Police Protective League v. City of Los Angeles* (2014) 232 Cal.App.4th 136, 142.)  Mere reassignment or removal from collateral duties without a reduction in salary or rank does not constitute punitive action. (*Perez v. City of Westminster* (2016) 5 Cal.App.5th 358, 364–365.)

Based upon the above law, the trial court denied ALADS' request to enjoin the LASD from making transfers or taking other action with respect to deputies on the *Brady* list.  The court found that ALADS was unlikely to succeed at trial because it offered no evidence to support its contention that any such action would be punitive in nature, rather than to accommodate the affected deputy's reduced credibility because of founded allegations of bias, moral turpitude, or dishonesty.  Further, the court determined that any deputy transferred or restricted to certain duties who believed that such action was punitive, would be able to challenge the reassignment or other change in duties administratively.  Thus, alternative remedies were available.

15

The trial court also denied the balance of ALADS' requests for additional injunctive relief as requested in the petition and complaint.

## III. The Preliminary Injunction

The trial court ordered ALADS' counsel to prepare the written order of preliminary injunction. The parties, however, could not agree and went back and forth on the final form of the written preliminary injunction. Initially, ALADS submitted an order that simply enjoined the LASD from releasing the *Brady* list, or any information from it, to any entity outside the LASD absent a court order issued in response to a properly filed and heard *Pitchess* motion. Real parties objected, arguing that such an order did not encompass the entirety of the trial court's ruling, since the court carved out an exception to the general prohibition against disclosure for deputies on the list who are also witnesses in a pending criminal prosecution. Additionally, real parties objected because the written injunction did not include the trial court's ruling that possible transfers or restrictions of duty do not violate POBRA.

ALADS submitted two forms of the written order for preliminary injunction: one consistent with its original order, and one consistent with real parties' requested changes. Each side filed formal objections to the opposing side's proposed order. The trial court signed, and on January 27, 2017, filed the written preliminary injunction requested by real parties. That order enjoins real parties from a number of actions: (1) disclosing the *Brady* list as a whole to any party outside the LASD; (2) disclosing the identity of any individual deputy on the *Brady* list to any party outside the LASD, except a relevant prosecutorial agency, and then only if the deputy is a potential

16

witness in a pending criminal prosecution; and (3) except as provided in (2) above, disclosing the identity of any individual deputy on the *Brady* list to any party outside the LASD, including prosecutorial agencies, unless compelled by a court order issued after a properly filed and heard *Brady* or *Pitchess* motion.

The order then recites additional "clarifying" principles: (1) the LASD is not precluded from creating and maintaining an internal *Brady* list; (2) the LASD is not precluded from taking action against any deputy because he or she is on the *Brady* list, including transfer or restriction of duties; and (3) the LASD is not precluded from disclosing any future *Brady* list to prosecutorial agencies insofar as it consists only of non-sworn employees not subject to POBRA. With respect to clarifying principle (2) above, the injunction adds that any deputy so affected by transfer, restriction of duty, or other action who believes the action to be punitive under POBRA, retains all administrative rights under POBRA to challenge and overturn such action.

## IV. ALADS' Immediate Petition for Writ of Mandate

ALADS filed the immediate petition for writ of mandate on February 14, 2017. In the petition, ALADS seeks an order to strike or stay enforcement of the portions of the written preliminary injunction that state that "the enjoined parties are *not* precluded from" (1) maintaining an internal *Brady* list; (2) disclosing to the relevant prosecutorial agency the identity of any deputy on the *Brady* list, in the absence of a properly filed *Pitchess* motion and accompanying court order, so long as the deputy is a potential witness in a pending criminal prosecution; (3) transferring, restricting duties of, or otherwise taking action against any deputy because he or she is on the *Brady* list; and

17

(4) creating and disclosing any future *Brady* list that includes only non-sworn employees outside the scope of POBRA.

We initially granted ALADS' request for an immediate stay and ordered a preliminary response to the petition from real parties, as well as a reply to that response from ALADS. Subsequently, we issued an order to show cause to the trial court why ALADS should not be granted the relief it seeks, to which real parties filed a return and ALADS filed a reply to the return.

## DISCUSSION

### I.  Review by Appeal or Review by Petition for Writ of Mandate

At the outset, we must determine whether it is appropriate to review the trial court's order of preliminary injunction by way of the immediate petition for writ of mandate or by way of a later appeal.

Code of Civil Procedure section 904.1, subdivision (a)(6), permits review by appeal from "an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction." The intent of the statute " 'is that all orders granting or refusing injunctions, whether temporary or permanent or provisional pending appeal, shall be appealable.' " (*Western Electroplating Co. v. Henness* (1959) 172 Cal.App.2d 278, 283 [construing former Code of Civ. Proc., § 963, the predecessor to Code of Civ. Proc., § 904.1].) Thus, the order by the court below granting, in part, ALADS' request for a preliminary injunction, is appealable.

Ordinarily, a judgment that is immediately appealable is not subject to review by mandate or any other extraordinary writ. (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 112.) Mandate, though, is available to review an appealable judgment when the remedy by appeal would be inadequate or the issues presented

18

are of public importance and must be resolved quickly. (*Id.* at p. 113.)

The primary issue in this case is whether a statewide statutory discovery procedure that has been in effect for nearly 40 years violates the Constitution, as construed in *Brady,* when enforced in the context of a filed criminal prosecution that includes as witnesses, peace officers with founded allegations of misconduct, relevant to veracity, in their personnel files. That procedure affects every state and local law enforcement agency in California, and potentially every state criminal prosecution wherein a state or local peace officer is a witness. As of 2008, there were 509 state or local law enforcement agencies within California that employed a total of 79,431 sworn personnel.[3] In this case, the trial court effectively held that law enforcement agencies have an affirmative constitutional obligation under *Brady*, in the absence of any compliance with the *Pitchess* statutes, to notify the prosecutor whenever one of their peace officers has a founded allegation of misconduct involving moral turpitude in his or her personnel file, so long as that officer is also a potential witness in a pending criminal case. The necessary corollary of this holding is that the *Pitchess* statutes, which require any party outside of the law enforcement agency— including the prosecutor—to make a showing of good cause before obtaining such a disclosure, are unconstitutional in this specific context.

---

[3] United States Department of Justice, Office of Justice Programs, *Bureau of Justice Statistics, Census of State and Local Law Enforcement Agencies, 2008* (July 26, 2011) No. NJC 233982, page 15, appendix table 6 (<https://www.bjs.gov/content/pub/pdf/csllea08.pdf>[as of July 11, 2017].)

19

While the trial court's ruling binds only the parties before it, this case is now before the Court of Appeal. Were we to agree with the trial court in a published opinion, the ruling would become binding upon trial courts throughout the state. (See *Auto Equity Sales, supra*, 57 Cal.2d at p. 455.) The ruling, imposed statewide, would materially change the way discovery of information from peace officer personnel records in criminal cases has been conducted for the past four decades. As a practical matter, it would require all state and local law enforcement agencies to notify prosecutors, on an ongoing basis as cases are filed, whenever an officer who is a witness has a founded allegation of misconduct in his or her personnel file relevant to veracity. Such a requirement would affect hundreds of law enforcement agencies and untold numbers of individual peace officers across the state. This case thus raises issues of public importance that must be resolved quickly. We therefore exercise our discretion and accept review of the trial court's decision by way of ALADS' petition for writ of mandate.

## II.    Standard of Review

When deciding whether to issue a preliminary injunction, a trial court considers two factors: (1) the reasonable probability that the party seeking the injunction will prevail on the merits at trial and (2) a comparison of the "irreparable harm" that will be suffered by that party if the preliminary injunction is denied to the "irreparable harm" that will be suffered by the opposing party if the preliminary injunction is granted. (Code Civ. Proc., § 526, subd. (a)(1), (2); *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109; *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1402.)

20

Ordinarily, the trial court's evaluation of the two foregoing factors is reviewed on appeal for abuse of discretion.  (*Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595.)  Questions of law, however, that are decided by the trial court in the course of its evaluation of the moving party's likelihood of success on the merits are reviewed de novo.  (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1280–1281.)  The trial court's determination of constitutional questions is also reviewed de novo.  (*Ibid.*)

We agree, in large part, with the trial court's reasonable probability of success/balance of harms analysis and find no abuse of discretion in its decision to issue a preliminary injunction.  Based upon our de novo review, though, we find that the trial court erred in its analysis of the constitutional question presented by this case and improperly limited the scope of its injunction.

## III.   Analysis of the Merits

As mentioned above, in this petition ALADS seeks relief from various portions of the trial court's written injunction: specifically, those portions that expressly do not prohibit the LASD from (1) maintaining an internal *Brady* list; (2) disclosing to the relevant prosecutorial agency the identity of any deputy on the *Brady* list who is a potential witness in a pending criminal prosecution where no order pursuant to a properly filed *Pitchess* motion has been obtained; (3) transferring, restricting duties of, or otherwise taking action against any deputy because he or she is on the *Brady* list; and (4) creating and disclosing any future *Brady* list that includes only non-sworn employees outside the scope of POBRA.  The first two depend upon an analysis of the interplay between *Brady* and *Pitchess*, the third upon an analysis

21

of POBRA, and the fourth upon general concepts of notice and due process.  We analyze each in turn.

### A.    *Brady* and *Pitchess*

In *Brady, supra*, 373 U.S. at page 87, the United States Supreme Court held that federal constitutional due process creates an obligation on the part of the prosecution to disclose all evidence within its possession that is favorable to the defendant and material on the issue of guilt or punishment.  In *Giglio v. United States*, *supra*, 405 U.S. at pages 153 through 155, the Court held that *Brady* evidence includes evidence that impeaches prosecution witnesses, even if it is not inherently exculpatory. Further, the prosecution's disclosure obligation under *Brady* extends to evidence collected or known by other members of the prosecution team, including law enforcement, in connection with the investigation of the case.  (*In re Steele* (2004) 32 Cal.4th 682, 697, citing *Kyles v. Whitley, supra*, 514 U.S. at p. 437.)

Evidence is material under *Brady* if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed.  (*United States v. Bagley* (1985) 473 U.S. 667, 682.)  The prosecution's duty to disclose exists whether or not the defendant specifically requests the information.  (*United States v. Agurs* (1976) 427 U.S. 97, 107.)

In *Pitchess*, the California Supreme Court held that under certain circumstances, and upon an adequate showing, a criminal defendant may discover information from a peace officer's otherwise confidential personnel file that is relevant to a defense of the charge against him or her.  (*Mooc, supra*, 26 Cal.4th at pp. 1216, 1219.)  *Pitchess* involved a defense request for information related to the complaining deputies' propensity for violence or use of excessive force as a defense to battery on peace

22

officer charges.  (*Pitchess*, *supra*, 11 Cal.3d at p. 534.)  The reasoning of *Pitchess,* however, has been extended to defense requests for evidence of a peace officer's dishonesty, instances of fabrication, or other acts amounting to moral turpitude. (*Johnson, supra*, 61 Cal.4th at p. 710; *Rezek v. Superior Court* (2012) 206 Cal.App.4th 633, 640.)

In 1978, the California Legislature codified the privileges and procedures discussed in *Pitchess* in sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045.  (*Mooc*, *supra*, 26 Cal.4th at pp. 1219–1220.)  Generally speaking, the *Pitchess* statutes require a criminal defendant to file a written motion that identifies and demonstrates good cause for the discovery sought.  If such a showing is made, the trial court then reviews the law enforcement personnel records in camera with the custodian, and discloses to the defendant any relevant information from the personnel file.  (*Mooc*, at p. 1226; see also Evid. Code, § 1043.)  Absent compliance with these procedures, section 832.7, subdivision (a), provides that peace officer personnel files, and information from them, "are confidential and shall not be disclosed in any criminal or civil proceeding[.]"  (See also § 832.7, subd. (f).)  The prosecution, like the defense, cannot discover peace officer personnel records without first following the *Pitchess* procedures.  (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1046; *Johnson, supra,* 61 Cal.4th at p. 714.)  Any records disclosed are subject to a mandatory protective order that they be used only for the purpose of the court proceeding for which they were sought.  (*Alford,* at p. 1042; see Evid. Code, § 1045, subd. (e).)

The standard of "good cause" required for *Pitchess* disclosure—materiality to the subject matter of the litigation and

a reasonable belief that the noticed agency has the type of information sought—is relatively relaxed and guarantees inspection and production of all potentially relevant documents. (*Johnson, supra*, 61 Cal.4th at p. 711.) The *Brady* test of materiality is much narrower than that employed by *Pitchess*: under *Pitchess*, a defendant need only show that the information sought is material to the subject matter of the litigation, whereas *Brady* requires that the information sought be material to the outcome of the litigation. (*Johnson,* at p. 711.) Thus, any information that satisfies *Brady'*s test of materiality necessarily meets the standard required for disclosure under *Pitchess*. (*Johnson,* at pp. 711–712.)

The *Pitchess* statutes protect the confidentiality of peace and custodial officer "personnel records," as well as any "information obtained from [them]." (§ 832.7, subd. (a).) "Personnel records" include any file maintained under an individual's name by his or her employing agency that contains records which relate to (1) personal data; (2) medical history; (3) election of employee benefits; (4) employee advancement, appraisal, or discipline; (5) complaints, or investigations of complaints, involving any event pertaining to the performance of the peace officer's duties which he or she participated in or perceived; and (6) any other information the disclosure of which would constitute an unwarranted invasion of personal privacy. (§ 832.8, subds. (a)-(f).)

The information protected by the confidentiality and disclosure procedures of the *Pitchess* statutes is broad. Thus, the identity of a peace officer that is derived from his or her personnel file, to the extent it connects that officer to administrative disciplinary proceedings or complaints of

24

misconduct also contained within the protected personnel file, may not be disclosed absent compliance with the *Pitchess* procedures. (*Copley Press, supra*, 39 Cal.4th at pp. 1297–1299; accord *Long Beach, supra*, 59 Cal.4th at pp. 71–73; *POST, supra*, 42 Cal.4th at pp. 295, 298-299.)

This rule applies even if the information connected to the identified officer is only generic in nature. We base this conclusion on the interplay of two subdivisions within section 832.7, as well as the plain language of *Copley Press*.

As discussed above, section 832.7, subdivision (a), prohibits disclosure of peace officer personnel records or information obtained from them "in any criminal or civil proceeding" absent compliance with the *Pitchess* procedures. Section 832.7, subdivision (c), however, creates an exception to the disclosure prohibition of subdivision (a): "[n]otwithstanding subdivision (a), a department or agency that employs peace . . . officers may disseminate data regarding the number, type, or disposition of complaints (sustained, not sustained, exonerated, or unfounded) made against its officers if that information is in a form which *does not identify the individuals involved*." (Italics added.) *Copley Press* ultimately held that "[t]he language limiting the information that may be disclosed under [section 832.7, subdivision (c),] demonstrates that section 832.7, subdivision (a), is designed to protect, among other things, 'the identity of officers' subject to complaints. [Citation.]" (*Copley Press, supra*, 39 Cal.4th at p. 1297.) In other words, if section 832.7, subdivision (c), creates an exception for the generic type of information described therein so long as it does not identify the officer, it necessarily implies that section 832.7, subdivision (a),

25

prohibits disclosure of such information to the extent it does identify the officer.

The dissent asserts that *Copley Press, POST,* and *Long Beach* are distinguishable from the present case because each involves California Public Records Act of 1968 (CPRA; Gov. Code, § 6250 et seq.) requests for *Pitchess* information from media organizations, rather than disclosures to prosecutors with *Brady* obligations.  (Conc. & dis. opn. *post,* at pp. 7–8.)  Thus, the dissent concludes, the *Pitchess* procedures do not prohibit the generic disclosure allowed by the trial court's injunction.  (Conc. & dis. opn. *post,* at p. 8.)

While this factual difference is accurate, we find it to be a difference without significance.  The *Pitchess* statutes and their requirements do not make distinctions among who is seeking the information, or the type of proceedings in which or for which they are sought:  "[p]eace officer or custodial officer personnel records . . . or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to [s]ections 1043 and 1046 of the Evidence Code."  (§ 832.7, subd. (a); see also *Johnson, supra*, 61 Cal.4th at p. 714 [prosecutors have no superior right to access *Pitchess* information and must comply with *Pitchess* procedures to obtain confidential information from peace officer personnel files].)  The plain language of section 832.7, subdivision (a), categorically prohibits disclosure absent compliance with the *Pitchess* statutes.  The confidentiality of the information protected by the *Pitchess* statutes does not depend upon who is seeking it or for what purpose it is sought.

The dissent also contends that *Copley Press* is distinguishable because the disclosure here "does not involve

26

records of any specific disciplinary incident—or any records at all." (Conc. & dis. opn. *post,* at p. 8.) The argument appears to be that simply identifying a deputy and indicating that he or she has at least one founded administrative allegation of misconduct relevant to his or her veracity is too generic to be considered information within the protection of the *Pitchess* statutes.

Again, we disagree. First, section 832.7, subdivision (a), protects not only personnel records, but all "information obtained from these records." Notifying an outside agency, even a prosecutor's office, that a deputy has an administratively founded allegation of misconduct involving moral turpitude cannot be characterized as anything other than disclosing information obtained from the peace officer's personnel file. Moreover, as discussed earlier, based upon the exception created by section 832.7, subdivision (c), *Copley Press* rejected the notion that generic complaint information which identifies a particular officer is outside the disclosure prohibition of section 832.7, subdivision (a). (*Copley Press, supra,* 39 Cal.4th at p. 1297.)

### 1. Creating and Maintaining an Internal *Brady* List

ALADS objects to the written injunction's provision that the LASD is "not precluded from maintaining a *Brady* list internally[.]"

The language objected to is contained in the portion of the injunction which begins, "For purposes of clarifying the Enjoined Parties' obligations under this injunction[.]" That qualifier is then followed by descriptions of various conduct not precluded: (1) creation and maintenance of an internal *Brady* list, (2) transfers or restrictions of duties of *Brady* list deputies, and (3) creation and disclosure of *Brady* lists that include only non-

27

sworn personnel.  ALADS contends, generally, that describing the conduct above as "not precluded" affirmatively authorizes that conduct, relief which real parties never noticed or formally requested.  Such affirmative relief, ALADS continues, granted without formal request or notice by any of the real parties, offends basic concepts of proper notice and due process.

ALADS' argument is not persuasive.  By inference, ALADS raised the issue of the legality of an internal *Brady* list in its original petition and complaint since it essentially objected to the creation of a *Brady* list based upon already founded misconduct unless the LASD first offered a current administrative appeal.  Moreover, the issue of the legality of such an internal list was discussed in both the trial court's tentative and during the preliminary injunction hearing.  During the hearing, ALADS did not object to the issue being raised.

Finally, the language of the preliminary injunction, considered as a whole and in context, does not affirmatively authorize the LASD to prepare the list.  Although not express, implicitly the language only clarifies or limits the extent of the prohibitions contained elsewhere in the injunction:  thus, we read this part of the injunction simply to mean that nothing in the preliminary injunction prohibits the LASD from creating the list, so long as it does not disclose it to any person or entity outside the LASD.  In other words, the language does not affirmatively compel or even authorize the LASD to review personnel records and create a *Brady* list, it simply indicates that *the injunction* does not prohibit the LASD from doing so.  In terms of a notice and/or due process issue, we find none.  The trial court was merely ensuring that the precise limits of its injunctive relief were understood by the affected parties.

28

Moreover, we agree with the trial court on the substantive merits of this issue. The *Pitchess* statutes prohibit the disclosure of peace officer personnel records to persons or entities outside the law enforcement agency absent compliance with their procedures. Neither *Pitchess* nor the statutes discuss, let alone prohibit, the internal collection of data, based upon past events found to have occurred after an investigation and administrative hearing by the employing law enforcement agency. Thus, we find no violation of *Pitchess* or the *Pitchess* statutes insofar as the LASD reviews already existing personnel records, and simply compiles or creates a summary or categorization of information already contained in those files for internal use only. (See *Michael v. Gates* (1995) 38 Cal.App.4th 737, 745 [the *Pitchess* statutory scheme "regulate[s] the use of peace officer personnel records in civil and criminal proceedings"; "[i]t was not intended to, and does not, create substantive or procedural obstacles to a police agency's review of its own files"].)

## 2. Disclosure of Identity if Deputy Is a Witness in a Pending Case

This, we believe, is ALADS' primary objection to the trial court's order: the injunction, as worded, does not prohibit the LASD from disclosing *Brady* list deputies to the district attorney, or other prosecutorial agency, so long as the deputies are also potential witnesses in a pending criminal prosecution, even in the absence of a properly filed, heard, and granted *Pitchess* motion.

The trial court concluded, and, for the reasons stated in Part III.A, *ante*, we agree, that such disclosure violates *Pitchess* and the *Pitchess* statutes. Based upon LASD personnel records, the proposed disclosure identifies the deputy by name and serial number and connects him or her to administratively sustained

29

allegations of misconduct involving moral turpitude or other bad acts, without first complying with the *Pitchess* procedures. (*Copley Press, supra,* 39 Cal.4th at pp. 1297–1299; accord *Long Beach, supra,* 59 Cal.4th at pp. 71–73; *POST, supra,* 42 Cal.4th at pp. 295, 298–299.) The trial court nevertheless found that constitutional due process, as construed in *Brady*, requires this violation of state law because it creates an affirmative obligation of disclosure that overrides the state confidentiality protections created by the *Pitchess* statutes. Thus, in order to affirm the trial court, we must find that the procedures required by the *Pitchess* statutes prior to disclosure are unconstitutional when a *Brady* list deputy is also a potential witness in a pending criminal prosecution.

In this regard, real parties have a tough row to hoe. Courts will presume that a duly enacted statute is constitutional unless its unconstitutionality appears "clearly, positively, and unmistakably." In making this analysis, all "presumptions and intendments favor its validity." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 10–11 (*City of Los Angeles*).)

Additionally, and most importantly, the California Supreme Court, as a general matter, has at least twice expressly observed that the statutory *Pitchess* procedures do not violate either *Brady* or constitutional due process, but rather, supplement both. In *City of Los Angeles*, the court held that the *Pitchess* statutes' limitation of discoverable complaints to those five years old or less does not violate the requirements of *Brady*. (*City of Los Angeles, supra,* 29 Cal.4th at p. 16.) In defense of its holding, the court agreed with the Attorney General that the " ' "*Pitchess* process" operates in parallel with *Brady* and does not

30

prohibit the disclosure of *Brady* information.' " (*City of Los Angeles,* at p. 14.)

In *Mooc*, the court "examine[d] the nuts and bolts of a *Pitchess* motion," and what such a motion requires of both the custodian and the court conducting the in camera review of records.  In doing so, the court specifically noted that the *Pitchess* "procedural mechanism for criminal defense discovery, which must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial [citations omitted], is now an established part of criminal procedure in this state."  (*Mooc, supra*, 26 Cal.4th at pp. 1225–1226.)  The *Mooc* court also observed that *Pitchess* "and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial." (*Mooc,* at p. 1227.)  In neither *City of Los Angeles* nor *Mooc* did our Supreme Court suggest that there is any conflict between *Brady* and *Pitchess.*

In addition to the more general observations of our Supreme Court in *City of Los Angeles* and *Mooc*, a relatively recent decision by our colleagues in Division Three of this District expressly considered, and rejected, a constitutional challenge that involves issues similar to those raised in this case.  In *People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1468, review denied January 28, 2004, S120823 (*Gutierrez*), a jury convicted the defendant of forcible oral copulation and forcible sexual penetration by foreign object while acting in concert.  Prior to

31

trial, the defendant filed a *Pitchess* motion which sought discovery from the personnel files of two Los Angeles Police Department officers who were percipient witnesses to at least some portion of the charged acts. (*Gutierrez,* at p. 1470.) The trial court denied the motion and did not conduct an in camera review, finding the defendant did not make the preliminary showing of good cause required by the *Pitchess* statutes. (*Ibid.*)

On appeal, the defendant contended that the statutory *Pitchess* procedures violated *Brady* because (1) they interfered with the prosecutor's affirmative obligation to ascertain and disclose exculpatory evidence and (2) placed upon a defendant the burden of establishing good cause for an otherwise obligatory *Brady* disclosure. (*Gutierrez, supra*, 112 Cal.App.4th at pp. 1468, 1470–1471.)

The Court of Appeal rejected defendant's contentions. Relying in part on *City of Los Angeles,* the *Gutierrez* court found that the materiality standard of *Pitchess* is both "broader and lower" than that of *Brady*. (*Gutierrez, supra*, 112 Cal.App.4th at p. 1474.) Thus, any defendant who meets the good cause required for *Pitchess* discovery, will also necessarily obtain any *Brady* material in the officer's file. (*Gutierrez,* at p. 1474.) Conversely, a defendant who cannot even meet the less stringent *Pitchess* materiality standard, by definition cannot meet the higher *Brady* standard. (*Gutierrez,* at p. 1474.) Thus, the court concluded, "*Pitchess* procedures implement *Brady* rather than undercut it, because a defendant who cannot meet the less stringent *Pitchess* standard cannot establish *Brady* materiality." (*Gutierrez,* at p. 1474.) The court also held that the prosecution has no obligation to search the law enforcement personnel files. Absent a successful *Pitchess* motion of its own, the prosecution

has no right of access to and thus no constructive possession of personnel files or their content. (*Gutierrez,* at pp. 1474–1475.) Since the prosecution has no general access to or constructive possession of law enforcement personnel files, it cannot be expected to review and disclose information from them. (*Id.* at p. 1475.)

The *Gutierrez* court also rejected defendant's contention that *Pitchess* unconstitutionally required him to make a good cause showing before obtaining evidence he was entitled to under *Brady.* (*Gutierrez, supra,* 112 Cal.App.4th at p. 1475.) The court held that a preliminary demonstration of materiality is a valid prerequisite to disclosure of evidence contained in conditionally privileged state agency files. (*Id.* at pp. 1475–1476; see also *Garden Grove Police Department v. Superior Court* (2001) 89 Cal.App.4th 430, 435 ["[w]e cannot allow [defendant] to make an end run on the *Pitchess* process by requesting the officers' personnel records under the guise of . . . section 1054.1 and *Brady* discovery motion"].)

In support of this position, the *Gutierrez* court relied upon *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 (*Ritchie*). In *Ritchie*, defendant sought access to a state child protective services file, a government agency that participated in the investigation of the child molestation charges against him. (*Ritchie*, at p. 43.) The trial court refused to order disclosure, finding the file conditionally privileged under state law. (*Ritchie*, at p. 44.)

On appeal, the United States Supreme Court construed defendant's argument for disclosure as a *Brady* due process challenge to the state confidentiality rules. (*Ritchie*, *supra*, 480 U.S. at pp. 56–57.) The Court first recognized that *Brady* and its progeny obligate the government to disclose favorable, material

33

evidence to the accused. (*Ritchie*, at p. 57.) The Court ultimately rejected the trial court's blanket denial of access to the file, and remanded the case so that the trial court could review the conditionally privileged file, determine whether any information in the file was exculpatory and material under *Brady*, and then order disclosure if necessary. (*Ritchie*, at pp. 57–58.) Significantly, the Court observed that defendant, "*of course*, may not require the trial court to search through the [agency] file without first establishing a basis for his claim that it contains material evidence." (*Ritchie*, at p. 58, fn. 15, italics added.) Thus, *Ritchie* found no constitutional problem with requiring a defendant to make a preliminary showing of good cause before discovery of conditionally privileged state investigative files.

*Pitchess* and the *Pitchess* statutes require no more than what was required of the defendant in *Ritchie*. We agree with the reasoning of *Gutierrez* and *Ritchie,* as well as the more general conclusions regarding the constitutionality of *Pitchess* procedures made in *City of Los Angeles* and *Mooc*. Furthermore, we agree with the trial court that disclosure of a deputy from the *Brady* list will cause stigma and irreparable harm to the individual deputy's reputation, while non-disclosure will cause no comparable harm to the LASD or the other real parties. Accordingly, we grant, in part, ALADS' petition for writ of mandate. The language in the injunction that allows the LASD, or any real party, to disclose the identity of any individual deputy on the *Brady* list to any agency or individual outside the LASD, absent a properly filed and granted *Pitchess* motion and corresponding court order, even if the affected deputy is a potential witness in a filed criminal prosecution, must be stricken.

Setting aside, for the moment, our holding that *Pitchess* and the *Pitchess* statutes do not violate constitutional due process as defined in *Brady,* we note one other issue with the trial court's injunction: as worded, the injunction allows disclosure outside of the *Pitchess* procedures whenever a *Brady* list deputy is a "potential" witness in a pending criminal prosecution. Not all "potential" LASD witnesses in a criminal case, however, will be significant enough that impeachment information in their personnel files will be material, which *Brady* requires as a prerequisite to disclosure. For example, while the credibility of a homicide detective who obtains an unrecorded confession from a murder defendant would likely be a material issue at trial, that of a patrol deputy who simply arrests the defendant but otherwise generates no incriminating evidence likely would not be. In the latter situation, impeachment information in the deputy's personnel file likely would not be material under *Brady* and thus there would be no disclosure obligation, even if we assume the validity of the trial court's constitutional rationale, that justifies ignoring the requirements of the *Pitchess* statutes. The injunction, though, permits violation of the *Pitchess* statutes in both situations described above, since it treats potential witnesses identically regardless of their materiality. The injunction is therefore overbroad even if we assume the validity of its own rationale.

### a. *Johnson* and the Attorney General Opinion

In their argument in favor of the trial court's injunction allowing disclosure of *Brady* list deputies who are potential witnesses in pending criminal prosecutions, real parties rely largely on the 2015 California Supreme Court decision in

35

*Johnson* and the California Attorney General Opinion ostensibly based upon it. (98 Ops.Cal.Atty.Gen. 54 (2015) (Opinion).) This reliance is misplaced.

We address *Johnson* first. In August 2010, the San Francisco Police Department (Department) created its own *Brady* policy through the enactment of Bureau Order No. 2010–01 (Order). (*Johnson, supra*, 61 Cal.4th at pp. 706–707, 724, appen.) The Order explained that because of repetitive requests from the district attorney to check personnel files of employees who might be witnesses in criminal trials, the Department was compiling a list of employees who had information in their personnel files that might be discoverable under *Brady*, and intended to disclose that list to the district attorney. (*Johnson,* at pp. 706–707.)

The Order set up a procedure similar to that proposed by real parties in the immediate case: "the [Department] will identify potential *Brady* material on an ongoing basis and notify the district attorney's office on an ongoing basis that the personnel files for particular officers may contain *Brady* material. When the police department becomes aware of potential *Brady* material regarding an officer, it creates a synopsis identifying the officer, the conduct, and the documents and information for potential disclosure. A departmental ' "*Brady* Committee" ' reviews the synopsis and, after notifying and permitting comment from the affected employee, recommends to the chief of police whether to disclose the employee's name to the district attorney. The chief of police either approves or disapproves the recommendation. If disclosure of an officer's name is approved, the district attorney is notified that the officer 'has material in his or her personnel file that may be subject to disclosure under' *Brady.*" (*Johnson, supra*, 61 Cal.4th at p. 707.)

36

The underlying criminal case in *Johnson* charged defendant with various domestic violence crimes. (*Johnson, supra*, 61 Cal.4th at p. 706.) The material witnesses in the case included two San Francisco Police Department officers. (*Ibid.*) The prosecutor, notified pursuant to the Order that both officers had *Brady* material in their personnel files, so advised the trial court and filed a *Pitchess* motion seeking discovery of the information. (*Johnson,* at p. 706.) In a declaration attached to the motion, the prosecutor also advised the court that both officers were " 'necessary and essential' prosecution witnesses." (*Ibid.*) In response, defendant filed his own *Pitchess*/*Brady* motion, and asked the court either to (1) conduct the *Pitchess* in camera review or (2) declare section 832.7 unconstitutional and order the Department to turn over the personnel files to the prosecutor for *Brady* review. (*Johnson*, at pp. 707–708.)

The trial court denied the request for in camera review, finding that the prosecution had not made the required *Pitchess* good cause showing. (*Johnson, supra*, 61 Cal.4th at p. 708.) Further, the trial court held that section 832.7 was unconstitutional, and ordered the Department to turn over both officers' personnel files to the prosecutor for *Brady* review. (*Johnson*, at p. 708.) Both the Department and the District Attorney's Office challenged the trial court's ruling by filing writs in the Court of Appeal. (*Ibid.*)

The Court of Appeal stayed the trial court order and issued an order to show cause. (*Johnson, supra*, 61 Cal.4th at p. 708.) Ultimately, the Court of Appeal held that the prosecution may, and before the court becomes involved, should, review the personnel files of peace officer witnesses in order to satisfy its constitutional *Brady* obligation. (*Johnson*, at pp. 708–709.) It

directed the trial court to modify its earlier order to provide that, if the prosecution found *Brady* material during its review of the personnel files, it must file a *Pitchess* motion to obtain authorization before disclosure to the defense. (*Johnson*, at pp. 709, 713.)

On review, the California Supreme Court reversed the Court of Appeal insofar as it ordered, or even allowed, the prosecution to review law enforcement personnel files absent a properly filed *Pitchess* motion and accompanying court order. (*Johnson, supra*, 61 Cal.4th at pp. 713, 723.) The court recognized that the prosecution has no greater right of access to law enforcement personnel files than does the defense. (*Johnson*, at pp. 712–713.) The prosecution, like the defense, must comply with *Pitchess* procedures if it seeks access to information from confidential law enforcement personnel files. (*Johnson*, at p. 714.)

The court then addressed the prosecution's *Brady* obligation when, as in the case before it, the law enforcement agency discloses to it that a witness officer may have *Brady* material in his or her personnel file. The court held that the prosecution is obligated to do nothing more than notify the defendant of the information provided to it; it is not required to make its own *Pitchess* motion and then disclose what it discovers as a result of that motion. The defense can decide whether, based upon that notice, it wishes to file its own *Pitchess* motion. (*Johnson, supra*, 61 Cal.4th at pp. 715–716.) " '[T]he prosecutor [has] no constitutional duty to conduct defendant's investigation for him. Because *Brady* and its progeny serve "to restrict the prosecution's ability to suppress evidence rather than to provide the accused a right to criminal discovery," the *Brady* rule does

not displace the adversary system as the primary means by which truth is uncovered.' " (*Johnson*, at p. 715, quoting *United States v. Martinez-Mercado* (5th Cir. 1989) 888 F.2d 1484, 1488.)

The defendant in *Johnson* argued that California's *Pitchess* procedures were inadequate to protect his right to exculpatory information under *Brady.* The court flatly rejected that argument and reiterated the observations it made previously in both *City of Los Angeles* and *Mooc*: "The *Brady* requirements and *Pitchess* procedures have long coexisted. '[T]he *Pitchess* scheme does not unconstitutionally trump a defendant's right to exculpatory evidence as delineated in *Brady.* Instead, the two schemes operate in tandem.' [Citation.] We are confident that trial courts employing *Pitchess* procedures will continue to ensure that defendants receive the information to which they are entitled." (*Johnson, supra*, 61 Cal.4th at pp. 719–720.) Significantly, the favorable citation omitted in the passage above is to *Gutierrez,* one of the cases we rely on today in upholding *Pitchess* and the *Pitchess* statutes against real parties' constitutional *Brady* challenge. (*Johnson*, at p. 720.)

As significant as what *Johnson* decides, however, is what it does *not* decide: *Johnson* does not decide and, in fact, the *Johnson* court does not mention, let alone discuss, the legality under *Pitchess* of the Department's initial disclosure to the district attorney that the two officers had *Brady* material in their personnel files. Neither the parties nor the court ever raised that issue. In fact, by the time the prosecutor in *Johnson* filed her *Pitchess* motion, the Order had been in place for over three years. (*Johnson, supra*, 61 Cal.4th at pp. 706, 724, appen.)

Thus, at the time of the *Johnson* case, the Order was essentially a fait accompli. It is unknowable, from the *Johnson*

39

opinion, why the legality of the order was not raised in that, or an earlier case. Whatever the reason, *Johnson* simply does not address the central issue of our case: the statutory legality of a law enforcement agency disclosing to an outside prosecutorial agency, absent a filed, heard, and court-granted *Pitchess* motion, the fact that a peace officer has founded allegations of misconduct in his or her personnel file and, to the extent such disclosure is illegal under state law, whether it is nevertheless constitutionally compelled by *Brady* and constitutional due process.

It is true that *Johnson* comments positively about the procedure created by the San Francisco Police Department: "[i]n this case, the police department has laudably established procedures to streamline the *Pitchess/Brady* process." (*Johnson, supra*, 61 Cal.4th at p. 721.) But such brief comment, in the context of a procedure whose legality is neither directly raised nor expressly addressed in the opinion, is not the same as formal legal approval. " 'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered.' " (*Kinsman v. Unocal Corporation* (2005) 37 Cal.4th 659, 680, quoting *Chevron U.S.A., Inc. v. Workers' Compensation Appeals Board* (1999) 19 Cal.4th 1182, 1195; accord *People v. Knoller* (2007) 41 Cal.4th 139, 154–155.) Put another way, "[a]n appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620, quoting *Childers v. Childers* (1946) 74 Cal.App.2d 56, 61.)

To approve formally the legality of the Department Order in *Johnson*, our Supreme Court would have had to find that the

Department's confidentiality obligations and procedures under sections 832.7 and 832.8 and Evidence Code sections 1043 and 1045, obligations and procedures that were enacted 15 years after *Brady*, and that had, in the decades since, become "an established part of criminal procedure in this state," *Mooc, supra*, 26 Cal.4th at page 1226, violate *Brady* and the Constitution. To do that, the court would have had to find first that *Brady* creates an affirmative and sua sponte constitutional obligation on the part of law enforcement agencies to disclose, to prosecutors, which of their officers have founded allegations of misconduct relevant to impeachment in their personnel files. Further, the court would have had to overrule, or at least severely restrict the application, in criminal cases, of three of its own precedents: *Copley Press, supra*, 39 Cal.4th at pages 1297–1299; *POST, supra*, 42 Cal.4th at page 295, and *Long Beach, supra*, 59 Cal.4th at page 71.

The change effected in California criminal jurisprudence by such a ruling would be significant. It would affect every law enforcement agency in this state and potentially every criminal prosecution with a peace officer witness. It would effectively require every local law enforcement agency in the state, in the absence of any compliance with the *Pitchess* statutes, to notify the prosecutor whenever one of their peace officers has a founded allegation of misconduct involving moral turpitude in his or her personnel file, so long as that officer is also a potential witness in a pending criminal case.

If this is what the Constitution requires under *Brady*, then so be it: the Constitution is the supreme law of the land and must be followed. For the reasons stated earlier, however, we do not believe this is required by the Constitution as explicated in *Brady*. Additionally, we do not believe this type of "sea change"

ruling is one our Supreme Court would make implicitly by commenting, without analysis, on a procedure whose legality was never raised by the parties or expressly discussed by the court. Given the other authority cited earlier in this opinion, we find the court's brief description of the Order in *Johnson* as "laudable" not dispositive in terms of our ruling on the ultimate, and serious, constitutional issue raised in this case. It certainly does not, in our opinion, mandate the significant change in the procedure governing discovery of peace officer personnel records that would be created were we to agree with real parties' position.

The California Attorney General's Opinion, based on *Johnson*, is likewise not persuasive. In the Opinion, the Attorney General approved the legality of a proposed policy, authored by the California District Attorneys Association, which addressed *Brady* disclosures from California Highway Patrol (CHP) personnel files. (98 Ops.Cal.Atty.Gen. 54 (2015).) Under the proposed policy, a qualified representative of the CHP would examine personnel files and compile a list of officers who had sustained administrative findings of misconduct involving moral turpitude or actual criminal convictions involving moral turpitude. Based upon this list, the CHP would create a secure database identifying the officers, but not the misconduct. Prosecutors would have access to the database and could search it for the names of officers who might testify in their upcoming trials. If an officer witness appeared on the database search, the prosecutor would then file a *Pitchess* motion and any information released after an in camera review would be disclosed to the defense. (98 Ops.Cal.Atty.Gen. at pp. 62–64.)

The CHP objected to this policy, arguing that it could not release to the district attorney the names of officers who were

also identified as having sustained allegations of misconduct without violating *Pitchess* and the *Pitchess* statutes, an argument fully supported by *Copley Press, supra,* 39 Cal.4th at pages 1297–1299; *POST, supra,* 42 Cal.4th at page 295; and *Long Beach, supra,* 59 Cal.4th at page 71. The Opinion summarily dismissed this concern with a wholly conclusory, and extremely brief reference to *Johnson*: "As a general proposition, CHP's argument is undermined by *Johnson*, which—although it did not spell out the bases for its assumption—plainly and necessarily approved a *Brady* procedure like this one." (98 Ops.Cal.Atty.Gen. at p. 64.) The Opinion did not undertake any analysis of the cases leading up to *Johnson*, including *Gutierrez*. Neither did it attempt to explain why our Supreme Court would toss out decades of criminal jurisprudence, thereby effecting a significant change in the way discovery of peace officer personnel records is conducted and which would affect every law enforcement agency and district attorney's office in this state, without any express analysis, and based solely upon an implication from favorable language describing a procedure whose legality was never raised in the litigation.

The Attorney General is authorized to issue advisory opinions to designated state and local officials, and such opinions are entitled to respect. They are however, advisory only, and are not binding on the courts. (*State of California v. Superior Court* (1986) 184 Cal.App.3d 394, 396; see also Gov. Code, § 12519.) Further, where, as here, an advisory opinion does not discuss relevant precedent or undertake serious legal analysis in the context of the immediate case, it may be disregarded as not persuasive. (See *Wenke v. Hitchcock* (1972) 6 Cal.3d 746, 752.)

For the reasons stated above, we find the Opinion to be not persuasive and of little help in the resolution of this case.

Neither *Johnson* nor the Opinion, therefore, persuades us that our earlier analysis and conclusion prohibiting disclosure of deputy identities from the *Brady* list, absent a properly filed and granted *Pitchess* motion and corresponding court order, are incorrect.

## B.    POBRA

ALADS also opposes any language in the injunction that allows the LASD to transfer, restrict duties of, or in any other similar way affect the job assignment or duties of any deputy on the *Brady* list.

As mentioned earlier, Government Code section 3300 et seq. is the Public Safety Officers Procedural Bill of Rights Act, otherwise known as POBRA.  POBRA grants public safety officers a number of basic procedural rights and protections, which must be followed by the public safety agencies that employ them.  Government Code section 3305.5, subdivision (a), prohibits any "punitive action" against or any denial of promotion of any public safety officer solely because that officer has been placed on a "*Brady* list," or because that officer's name might otherwise be subject to disclosure under *Brady.*

A "*Brady* list" is any "system, index, list, or other record containing the names of peace officers whose personnel files are likely to contain evidence of dishonesty or bias, which is maintained by a prosecutorial agency or office in accordance with the holding in *Brady v. Maryland* (1963) 373 U.S. 83."  (Gov. Code, § 3305.5, subd. (e).)  "Punitive action" is "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment."

44

(Gov. Code, § 3303.) "Public safety officer" includes any county sheriff's deputy. (Gov. Code, § 3301; Pen Code, § 830.1, subd. (a).) Non-probationary officers must be given an opportunity for administrative appeal of any punitive action. (Gov. Code, § 3304, subd. (b).) Any public safety officer who believes his or her rights under POBRA have been violated by his or her employing agency may bring an action in the superior court for injunctive relief, a civil penalty not to exceed $25,000 for each violation, and actual damages. (Gov. Code, § 3309.5, subds. (a), (c), (d), (e).)

Technically speaking, a *Brady* list, as defined by POBRA, includes only lists maintained "by a prosecutorial agency or office," and does not seem to include similar lists maintained by a law enforcement agency. (See Gov. Code, § 3305.5, subd. (e).) Nevertheless, the protections of Government Code section 3305.5 do apply to the list created by the LASD since Government Code section 3305.5, subdivision (a), prohibits punitive action against any public safety officer on a *Brady* list, as defined, or against any officer whose "name may otherwise be subject to disclosure pursuant to [*Brady*]." If an officer appears on a *Brady* list created by a law enforcement, rather than prosecutorial agency, he or she certainly "may otherwise be subject to disclosure pursuant to [*Brady*]." (Gov. Code, § 3305.5, subd. (a).)

None of the acts proposed by real parties that may result from a deputy's placement on the LASD's *Brady* list involve "dismissal, demotion, suspension, reduction in salary, [or] written reprimand." (Gov. Code, § 3303.) Indeed, Captain Nelson's declaration establishes that any response by the LASD will *not* involve changes in rank, salary, or even bonus pay. The only possible action suggested by Captain Nelson's declaration or the

45

October 14, 2016 letter described in Government Code section 3303 is the possibility of transfer.

A transfer must be punitive in nature before it violates POBRA. (Gov. Code, § 3303.) A transfer is not inherently disciplinary or disadvantageous to the officer, and is punitive only when it is "for purposes of punishment." (*White v. County of Sacramento, supra*, 31 Cal.3d at pp. 682–683; see also Gov. Code, § 3303.) Furthermore, a transfer is not punitive solely because it seeks to address the officer's deficient performance in a current assignment. An agency may have many reasons, quite apart from punishment, for transferring an employee who is not performing at a satisfactory level in his or her particular assignment: there is a difference between a transfer to punish deficient performance and a transfer to compensate for the deficient performance. (*Los Angeles Police Protective League v. City of Los Angeles, supra*, 232 Cal.App.4th at p. 142.) Mere reassignment or removal from collateral duties absent a reduction in salary or rank do not amount to punitive action. (*Perez v. City of Westminster, supra*, 5 Cal.App.5th at pp. 364–365.) Before an officer is entitled to an administrative appeal of an alleged punitive transfer, he or she must present some evidence that the agency's conduct was indeed for purposes of punishment and not for some other, valid, reason. The focus must be on what the agency actually intended, not on what the officer believes the agency's intention to be. (*Los Angeles Police Protective League v. City of Los Angeles,* at pp. 141–142.)

On this issue, we agree with the trial court that ALADS did not demonstrate a likelihood of success on the merits. The record below shows that ALADS failed to rebut real parties' evidence that any transfer or other change in duties based upon a deputy's

46

placement on the LASD *Brady* list would be to address, or compensate for, the deputy's reduced credibility due to potential disclosure of the deputy's past founded allegations of misconduct. Such a transfer is not "for purposes of punishment." Moreover, as the trial court observed, any individual deputy in the future who believes his transfer is, in fact, punitive, still retains the procedural protections of POBRA and may assert them if he or she feels it is necessary.

To the extent ALADS argues that this portion of the injunction grants affirmative relief to real parties that they neither requested nor properly noticed, we reiterate our comments made in the discussion of the LASD's creation and maintenance of a wholly internal *Brady* list in part III.A.1, *ante.* Considered as a whole, and in context, the language merely limits what the immediate injunction prohibits. It does not affirmatively compel or even authorize the LASD or any other real party to make transfers or impose restrictions of duty. It simply establishes that the immediate injunction, in and of itself, does not prohibit such acts.

### C. Non-sworn Employees

The final paragraph of the trial court's injunction states that "[r]espondents are not enjoined from disclosing any future developed 'Brady List' to the Los Angeles County District Attorney's Office, or any other prosecutorial agency, provided any new Brady List contains only the names of non-sworn employees who are not subject to the Public Safety Officers' Procedural Bill of Rights Act ('POBRA'), *Government Code* section 3300, et seq."

As ALADS points out, the non-sworn employees of the LASD are not parties to, and are therefore not represented in, this litigation. The issue of a *Brady* list for non-sworn LASD

47

employees is not raised by ALADS' petition and complaint, and, as far as we can see, was never raised by the parties either in their pleadings, motions, or other documents filed in the trial court, or during oral argument before the trial court. It appears to be completely beyond the scope of the issues fairly raised by the litigation up to this point, and thus beyond the scope of the trial court's injunctive authority in the context of the immediate case. Whatever the legality, or illegality, of a *Brady* list disclosure of non-sworn employees, that issue must wait for a lawsuit in which it is fairly raised, noticed, and litigated. That lawsuit is not the immediate case.

## DISPOSITION

While we agree with the trial court that injunctive relief is proper in this case, for the foregoing reasons we disagree with its analysis of the constitutional question presented and thus with the limited scope of the injunction ordered. The petition for writ of mandate is granted, in part. The trial court's order of preliminary injunction as worded, must be modified so that it is consistent with this opinion.

The trial court is ordered to strike from the injunction any language that allows real parties or any of them to disclose the identity of any individual deputy on the LASD's *Brady* list to any individual or entity outside the LASD, even if the deputy is a witness in a pending criminal prosecution, absent a properly filed, heard, and granted *Pitchess* motion, accompanied by a corresponding court order. The court must also strike any language that purports to address real parties' power or authority with respect to a *Brady* list involving non-sworn employees.

48

In all other respects, the petition is denied.

SORTINO, J.[*]

I CONCUR:

BIGELOW, P.J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Association for Los Angeles Deputy Sheriffs v. Superior
Court (Los Angeles County Sheriff's Department et al.)*
**B280676**
**Grimes, J., concurring and dissenting.**

I concur in the majority opinion with one significant
exception. I cannot accept the majority's principal conclusion:
that when the personnel records of a peace officer, who is a
potential witness in a pending criminal prosecution, contain
sustained allegations of misconduct, the Los Angeles County
Sheriff's Department (Department) cannot disclose that fact to
the prosecutor, "absent a properly filed, heard, and granted
*Pitchess* motion,[1] accompanied by a corresponding court order."
(Maj. opn. *ante,* at p. 48.)

In my view, the *Pitchess* statutes,[2] construed as we have
always done "against the larger background of the prosecution's
[*Brady* obligation]" (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225
(*Mooc*)), do not prohibit the disclosures permitted by the trial
court's injunction. I conclude the trial court properly harmonized
the *Brady*[3] and *Pitchess* authorities in refusing to enjoin the
Department from disclosing to the district attorney the identity of
any deputy on the Department's *Brady* list who is a potential
witness in a pending criminal prosecution.

---

1       *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2       As the majority explains, the *Pitchess* statutes are Penal
Code sections 832.7 and 832.8 and Evidence Code sections 1043
through 1045.

3       *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

1

As explained *post*, my conclusion is supported by analysis of case authorities, including *People v. Superior Court* (*Johnson*),[4] by years of past practice, and by the unworkability of requiring a prosecutor to make a *Pitchess* motion merely to find out whether or not a deputy in a pending prosecution has potential *Brady* material in his personnel file.

A *Pitchess* motion is clearly required for anyone, including the district attorney, to obtain an officer's personnel records or the disciplinary information in them.  No motion is required to transfer, between members of the prosecution team, the identities of officers involved in a pending prosecution who may have *Brady* materials in their personnel records.  There is no *Pitchess* violation in a procedure that is consonant with *Brady* obligations and that does not involve a prosecutor's perusal of any information in an officer's personnel file.

1.    **A Preliminary Consideration**

The majority characterizes the trial court as having "acknowledged that such a disclosure . . . violates the *Pitchess* statutes," but nonetheless found that *Brady* compels the violation of state law.  (Maj. opn. *ante*, at p. 5.)  I disagree with this characterization of the trial court's holding.

At the outset, the trial court recognized this case involves "the interplay of the *Brady* Doctrine versus the *Pitchess* statutes and the confidentiality of peace officer personnel files."  The court said:  "[T]hey [(law enforcement agencies)] have a constitutional duty to disclose *Brady* information in a particular criminal case, but they don't have a duty to do **and what the Pitchess**

---

[4]    *People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696 (*Johnson*).

***statutes prohibit*** is the preparation of a *Brady* list that is communicated outside the Department, in this case, to a prosecuting agency about deputies when there is no pending criminal case in which that deputy is involved.  I believe that is unlawful."[5]  (Boldface and italics added.)  The court went on to agree that the Department is "required to provide the names of employees with potential exculpatory impeachment material in their personnel file to the District Attorney, . . . when there is a pending case."

In my view, the trial court simply harmonized *Pitchess* and *Brady*, and did not conclude that disclosure to the prosecutor in a pending prosecution violates the *Pitchess* statutes, or that *Brady* compels any such violation, or that the *Pitchess* statutes "are unconstitutional."  (Maj. opn. *ante*, at p. 19.)  The majority says the trial court "[e]ssentially" or "effectively" did so (maj. opn., *ante*, at pp. 14, 19).  While I disagree, I find it unnecessary to debate or resolve the trial court's thinking on the point.  But the majority uses its construction of the trial court's decision to raise issues that are unnecessary to a resolution of this case:  namely, whether the *Pitchess* statutes are constitutional (they are), and whether a police department *must* institute *Brady* procedures like the ones at issue in this case.

As to the latter point, the majority says the trial court "effectively held that law enforcement agencies have an affirmative constitutional obligation . . . to notify the prosecutor

---

[5]  We have no occasion in this case to determine whether the trial court was correct on that point.  This writ proceeding presents only the question whether the *Pitchess* statutes prohibit the communication of the name of a *Brady*-list deputy by the Department to the prosecutor in a pending prosecution.

3

whenever one of their peace officers has a founded allegation of misconduct involving moral turpitude in his or her personnel file, so long as that officer is also a potential witness in a pending criminal case." (Maj. opn. *ante*, at p. 19.) I do not construe the trial court's injunction as creating any affirmative duty on the part of the Department or any other law enforcement agency. The trial court's injunction prohibits the Department from disclosing its *Brady* list to the prosecutor (a point not at issue in this writ proceeding). The injunction does not compel the Department to do anything. It simply allows the Department to implement its decision that its *Brady* obligations are best fulfilled by giving the names of peace officers with *Brady* material in their files to prosecutors when charges are pending.[6] The injunction, and a decision by this court to affirm it, would not require any other law enforcement agency to institute similar practices. It would merely confirm that such a practice is consonant with *Brady* and does not violate *Pitchess*.

     That leads me to one other preliminary point. In its petition and its reply, petitioner repeatedly maintains that only the prosecutor has a *Brady* duty to disclose exculpatory or impeachment information to the defendant. *In re Brown* tells us that the high court "has unambiguously assigned the duty to disclose [to the defendant] solely and exclusively to the

---

[6]    Indeed, the majority, in rejecting petitioner's challenge to the language elsewhere in the injunction stating the Department is "*not* precluded from maintaining a '*Brady* List' internally," recognizes that that language "does not affirmatively compel . . . the [Department] to review personnel records and create a *Brady* list[.]" (Maj. opn. *ante*, at p. 28; see also *id.* at p. 47 [the injunction "does not affirmatively compel . . . the [Department] to make transfers or impose restrictions of duty"].)

4

prosecution; those assisting the government's case are no more than its agents." (*In re Brown* (1998) 17 Cal.4th 873, 881.)  This means that "the prosecution remains responsible for any lapse in compliance," and "must be charged with any negligence on the part of other agencies acting in its behalf [citations]." (*Ibid.*)  This has nothing to do with the **law enforcement agency's own obligation to reveal *Brady* information to the prosecutor**.  It only means that the prosecutor will pay the price for peace officer negligence.  (See *United States v. Blanco* (9th Cir. 2004) 392 F.3d 382, 394 ["*Brady* . . . impose[s] obligations not only on the prosecutor, but on the government as a whole"]; see also *United States v. Zuno-Arce* (9th Cir. 1995) 44 F.3d 1420, 1427 ["it is the government's, not just the prosecutor's, conduct which may give rise to a *Brady* violation"].)

2.    **The Disclosure Permitted by the Trial Court Does Not Violate the *Pitchess* Statutes**

I agree with the majority – indeed, everyone agrees – that *Brady* principles and *Pitchess* procedures have long been interpreted together and in harmony.  (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 14 ["the ' "*Pitchess* process" operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information' "]; *Mooc, supra,* 26 Cal.4th at p. 1225 [the *Pitchess* "procedural mechanism for criminal defense discovery . . . must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial"].)

I see nothing to prevent continued harmonization in this case.

5

### a. The *Copley Press* line of cases

The crux of the difference between the majority's analysis and mine lies in the construction of Supreme Court cases that have held that a deputy's identity is confidential under the *Pitchess* statutes, and may not be disclosed to the public, where the records in question "linked the officer's name . . . to a confidential disciplinary action involving the officer . . . ." (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 73, 71 (*Long Beach*), discussing *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272 (*Copley Press*); see also *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 298 (*Commission*) [explaining that "[i]n *Copley Press*, we held that records of peace officer disciplinary appeals . . . constituted confidential personnel records under [Penal Code] section 832.7, and that the Court of Appeal had erred in ordering disclosure of the name of the deputy involved in a particular matter."].)[7]

Unlike the majority, I cannot read those Supreme Court cases as supporting the notion that in a pending prosecution, a law enforcement agency may not tell the prosecutor that a

---

[7] In *Long Beach*, the court permitted disclosure to The Los Angeles Times of names of officers involved in on-duty shootings, observing that disclosure "would not imply that those shootings resulted in disciplinary action against the officers, and it would not link those names to any confidential personnel matters or other protected information." (*Long Beach, supra,* 59 Cal.4th at pp. 73, 64.) In *Commission*, the court permitted disclosure of names, employing department, and hiring and termination dates of peace officers included in an agency's database; those records were not rendered confidential by the *Pitchess* statutes. (*Commission, supra,* 42 Cal.4th at p. 284.)

potential witness in that criminal case has potential exculpatory or impeachment information in his or her personnel file that might impair the officer's credibility on the witness stand. None of those cases stands for that proposition. Indeed, none of them was decided in a context where *Brady* principles were also in play. None of them even mentions *Brady*. All of them arose from claims by a media organization under the California Public Records Act (CPRA) for release of information to the general public. *Copley Press* held that the CPRA did not "require[] disclosure to a newspaper publisher of records of [a county commission] relating to a peace officer's administrative appeal of a disciplinary matter" (*Copley Press, supra,* 39 Cal.4th at p. 1279), and that the deputy's identity was confidential under Penal Code section 832.7, which was "designed to protect, among other things, 'the identity of officers' subject to complaints." (*Copley Press,* at p. 1297.)

Thus, *Copley Press* involved a media request for "records, including the name of the peace officer," relating to the officer's appeal of a disciplinary matter. (*Copley Press, supra,* 39 Cal.4th at p. 1279.) Both *Long Beach* and *Commission* explain *Copley Press* as involving the release to the *public* of *records* that linked the officer's name "to a confidential disciplinary action involving the officer" (*Long Beach, supra,* 59 Cal.4th at p. 73) and disclosed "the name of the deputy involved in a particular matter" (*Commission, supra,* 42 Cal.4th at p. 298).

The majority apparently believes both that the prosecutor in a pending prosecution is no different from the general public, and that the Department's identification of a deputy as having *Brady* material in his records is the equivalent of releasing

7

disciplinary records that link the deputy to the "particular matter" (*Commission, supra,* 42 Cal.4th at p. 298). I do not.

The disclosure the trial court permitted in this case is entirely different from the disclosure prohibited in *Copley Press.* As we have seen, the disclosure is from a law enforcement member of the prosecution team to the prosecutor in a pending criminal proceeding, not a disclosure to the general public. And the disclosure does not involve records of any specific disciplinary incident – or any records at all. The disclosure is simply of the fact, known to the Department, that there may be *Brady* material in the officer's personnel records. And as we know, the prosecutor is charged with knowledge of exculpatory evidence known to members of the prosecution team, including law enforcement, and has a duty to disclose material exculpatory evidence, even if not requested to do so by the accused. (*Johnson, supra,* 61 Cal.4th at p. 709.) Under these circumstances, I cannot fathom a conclusion that keeps the prosecutor in the dark about the Department's knowledge of *Brady* material in the files of a deputy who may be a witness in a pending proceeding.

In the majority's view, there is no material distinction between the disclosure of a deputy's name to the prosecutor, and the disclosure of identifying records to the general public forbidden in *Copley Press.* The majority points out that "[t]he prosecution, like the defense, cannot discover peace officer personnel records without first following the *Pitchess* procedures." (Maj. opn. *ante,* at p. 23.) I agree, of course; *Johnson* reminds us of the same point: "we have said that [Penal Code section 832.7, subdivision (a)] requires the prosecution, as well as the defendant, to comply with the *Pitchess* procedures if it wishes to obtain information from confidential personnel

8

records." (*Johnson, supra,* 61 Cal.4th at p. 712.)  But that principle on its face applies to "obtain[ing] information from confidential personnel records." (*Ibid.*)  That is not what the trial court's injunction here permits, and it *is* what *Copley Press* prohibits.

In short, I see nothing in the *Copley Press* line of cases – none of which involves harmonization of *Pitchess* and *Brady* principles – that is inconsistent with the trial court's ruling, or that supports the proposition that the disclosures permitted by the trial court violate the *Pitchess* statutes.[8]

### b.    Practical considerations

The majority holds that the language in the injunction allowing the Department "to disclose the identity of any individual deputy on the *Brady* list" to anyone outside the Department, "absent a properly filed and granted *Pitchess* motion and corresponding court order," must be stricken. (Maj. opn. *ante*, at p. 34.)

I must confess that I may not understand the practical import of this holding, which tells us that a prosecutor must file a *Pitchess* motion to obtain the identity of a deputy on the *Brady*

---

[8]    Petitioner's authority for the proposition that an employing agency is prohibited from making voluntary public disclosure of confidential peace officer records (*Davis v. City of San Diego* (2003) 106 Cal.App.4th 893, 902) is likewise inapt.  *Davis* held that narrative reports on a police shooting constituted confidential personnel records under the *Pitchess* statutes (*Davis,* at p. 902), and the city was "statutorily precluded from voluntarily disclosing those reports to the public" (*id.* at p. 898). Again, the case involves a release of specific records to the general public, does not mention *Brady,* and has nothing to do with harmonizing *Brady* obligations.

9

list, that is, to find out whether or not a deputy in a pending prosecution has potential *Brady* material in his or her file.  But the *Pitchess* procedures themselves demonstrate the unworkability of making a *Pitchess* motion for that purpose.

A *Pitchess* motion cannot be made unless the prosecutor knows the identity of the officer in question.  (*Pitchess* motions require, among other things, "[i]dentification of . . . the peace or custodial officer whose records are sought . . . ."  (Evid. Code, § 1043, subd. (b)(1).))  So, the real effect of the majority's holding would seem to be either (1) to prevent entirely any disclosure of the identity of a *Brady*-list officer by the Department to the prosecutor, or (2) to require the prosecutor to make *Pitchess* motions for every officer involved in a pending criminal case (though it is hard to see how the requisite "good cause" could be shown), or (3) to require the prosecutor to risk the consequences of possible failure to disclose exculpatory *Brady* material to the defendant.  This is an unacceptable and, in my view, entirely unnecessary conundrum, created by the erroneous conclusion that the disclosure permitted by the trial court violates the *Pitchess* statutes.  No case has so held and, as discussed above, the *Copley Press* line of cases does nothing, in my view, to advance the majority's position.

The purport of the majority's decision is that it is illegal under *Pitchess* for any law enforcement agency to tell the prosecutor in a pending criminal proceeding that a potential witness may have *Brady* material in his or her records.  But the record in this case suggests that law enforcement agencies across the state have been doing so for years – not under a formalized procedure as attempted in this case (although that, too, has been

10

happening since at least 2010), but in response to informal requests from prosecutors.

For example, the Attorney General tells us that similar policies are "already in use by a number of district attorneys' offices and law enforcement agencies." (98 Ops.Cal.Atty.Gen. 54 (2015) [2015 Cal.AG Lexis 7, pp.*15-*16; see *id.* at p. *23] [referring to "these ongoing practices" and observing that "[w]e understand that a number of police departments employ policies similar to the one under consideration here"].) The procedures in the *Johnson* case (see pt. c., *post*) were implemented in 2010, and the order doing so explained the procedures were adopted because " '[r]epetitive requests by the District Attorney that the [Police] Department check employee personnel files of Department employees who may be witnesses create unnecessary paperwork and personnel costs . . . .' " (*Johnson, supra,* 61 Cal.4th at pp. 707, 725.) Clearly, whether formalized or otherwise, law enforcement agencies – at least in some parts of the state – have been identifying police officers with *Brady* material in their personnel files to prosecutors for years. (As the trial court observed, correctly or not, "I assume [the Department's] been doing that for the last 50 years or however long *Brady* has existed.") I cannot sign on to the majority's conclusion that these actions by law enforcement agencies violate California law.

c.      ***People v. Superior Court (Johnson)***

That brings me to the *Johnson* opinion, described in detail by the majority. (Maj. opn., *ante,* at pp. 35-39.) *Johnson* held that "the prosecution does not have unfettered access to confidential personnel records of police officers who are potential witnesses in criminal cases," but "must follow the same

procedures that apply to criminal defendants, i.e., make a *Pitchess* motion, in order to seek information in those records." (*Johnson, supra,* 61 Cal.4th at p. 705.) And, where the police department, "acting pursuant to procedures it has established," informed the district attorney that confidential personnel records of peace officers who were potential witnesses might contain exculpatory information, "the prosecution fulfills its *Brady* duty as regards the police department's tip if it provides the defense information it received from the police department, namely, that the specified records might contain exculpatory information." (*Ibid.*)

In my view, *Johnson* supports, if not compels, the conclusion that the *Pitchess* statutes do not preclude the procedure the trial court approved here. In *Johnson*, the police department "informed the district attorney that the officers' personnel records might contain *Brady* material . . . ." (*Johnson, supra,* 61 Cal.4th at p. 715.) *Johnson* observed that "[n]o one disputes" that the prosecution then "had a duty under *Brady* . . . to provide this information to the defense." (*Ibid.*) The question in *Johnson* was "whether the [*Brady*] obligation goes beyond that." (*Ibid.*) The answer was "no," because, "[i]f the prosecution informs the defense of what it knows regarding information in confidential personnel records, and the defense can seek that information itself, no evidence has been suppressed." (*Ibid.*) The court further explained: "Because a defendant may seek potential exculpatory information in those personnel records as well as the prosecution, the prosecution fulfills its *Brady* obligation if it shares with the defendant any information it has regarding whether the personnel records contain *Brady* material,

12

and then lets the defense decide for itself whether to file a *Pitchess* motion." (*Id.* at p. 716.)

The majority appears to believe that the same result is appropriate – letting the defense decide whether to file a *Pitchess* motion – even when the prosecution does *not* share information, known to the law enforcement agency, that there is *Brady* material in the officer's file. Thus the majority observes that *Johnson* "flatly rejected" the defendant's claim that *Pitchess* procedures were inadequate to protect his right to exculpatory information under *Brady*. (Maj. opn. *ante,* at p. 39.) But the majority fails to consider that *Johnson* found *Pitchess* procedures would "ensure that defendants receive the [*Brady*] information to which they are entitled" (*Johnson, supra,* 61 Cal.4th at p. 720) *in a context where the police told the prosecutor, who shared with the defense*, the fact that there *was Brady* material in the officers' files. In other words, the premise for everything *Johnson* tells us is that the law enforcement agency told the prosecutor there was potentially exculpatory *Brady* material in police officers' personnel files, and the prosecutor disclosed that fact to the defense.[9]

---

[9]    The majority (maj. opn. *ante*, at pp. 31-33) relies on *People v. Gutierrez* (2003) 112 Cal.App.4th 1463 for the proposition that "*Pitchess* procedures implement *Brady* rather than undercut it, because a defendant who cannot meet the less stringent *Pitchess* standard cannot establish *Brady* materiality." (*Gutierrez,* at p. 1474.) The majority points out that *Johnson* cited *Gutierrez* for the principle that " ' "the two schemes operate in tandem." ' " (Maj. opn. *ante*, at p. 39, quoting *Johnson, supra,* 61 Cal.4th at p. 720.) Of course I agree with those principles, but I do not see how *Gutierrez* is relevant in this case. *Gutierrez* rejected the defendant's contention that the statutory *Pitchess* procedures

The majority nevertheless insists that *Johnson* did not mention, discuss or decide the legality under *Pitchess* of the police department's initial disclosure to the prosecutor, and so this court is now free to decide that such disclosures are in fact illegal under *Pitchess*. I recognize, of course, that *Johnson* did not expressly decide or discuss the point. And I am well aware that an opinion does not stand for a principle that the court was never asked to decide. Nonetheless, I cannot imagine the *Johnson* court could have failed to question the legality, under the very statutory scheme it was discussing, of the police department's disclosures to the prosecution, if there was any basis to do so.

The procedures the police department established in *Johnson* were appended in their entirety to the Supreme Court's opinion. The opinion specifically quotes from the police department's order summarizing the procedure: " '[T]he Department advises the District Attorney's Office of the names of employees who have information in their personnel files that may require disclosure under *Brady*. The District Attorney's Office then makes a motion under Evidence Code 1043 and 1045 for *in*

---

violated *Brady* (on the ground, among others, that "the prosecutor was obliged to conduct a review of the files of 'all significant police officer witnesses' and disclose any *Brady* material"). (*Gutierrez*, at pp. 1474-1475.) *Gutierrez* rejected that claim, pointing out that the prosecutor "does not generally have the right to possess and does not have access to confidential peace officer files," so the defendant's argument for routine review of those files "necessarily fails." (*Id*. at p. 1475.) Assuming that to be correct, I do not see its relevance to the circumstances here, where no one has suggested that the district attorney may review an officer's personnel file without following *Pitchess* procedures.

*camera* review of the records by the court.' " (*Johnson, supra,* 61 Cal.4th at p. 707.) The police department's disclosure of the officer's name is the foundation of the entire procedure. The fact of that disclosure is repeated several times throughout the order appended to the *Johnson* opinion.

In my view, had there been any doubt as to the legality of the disclosure of the names of officers with *Brady* information in their files, the court would have noticed it and requested briefing on it. The author in *Johnson*, Justice Chin, is steeped in *Pitchess* procedures. He wrote the opinion in *Copley Press*, and he dissented in *Commission*, taking the view that, under Penal Code section 832.7, an officer's name cannot be disclosed to the public even if it is *not* linked to private or sensitive information listed in section 832.8. (*Commission, supra,* 42 Cal.4th at p. 311 (dis. opn. of Chin, J.).) In short, the *Johnson* court was supremely cognizant of the confidentiality requirements of the *Pitchess* statutes – and it premised its opinion on a procedure the linchpin of which is a disclosure by the police department of *Brady*-list names to the prosecutor.

*Johnson* is clear: "In this case, the police department has laudably established procedures to streamline the *Pitchess/Brady* process. It notified the prosecution, which in turn notified the defendant, that the officers' personnel records might contain *Brady* material. A defendant's providing of that information to the court, together with some explanation of how the officer's credibility might be relevant to the proceeding, would satisfy the showing necessary under the *Pitchess* procedures to trigger in camera review." (*Johnson, supra,* 61 Cal.4th at p. 721.)

In sum, I believe the *Johnson* case is good reason to conclude that the disclosures permitted by the trial court in no

15

way violate the *Pitchess* statutes.  But even absent *Johnson*, I think it is apparent, for the reasons discussed above, that the disclosures permitted by the trial court in this case do not violate the *Pitchess* statutes.

## 3.    Summary and Conclusion

In summary, and at the risk of repetition, I return to one of my introductory points.  This case does not present the question whether *Brady* principles *mandate* disclosure of officer names to the prosecutor.  The trial court's injunction merely allows the Department to implement a determination that it can best fulfill its *Brady* obligations by giving the names of peace officers with *Brady* material in their files to prosecutors when charges are pending.  The injunction mandates nothing of the Department or any other law enforcement agency.

The question presented to us is whether the *Pitchess* statutes preclude the disclosure of *Brady*-list names by the Department to the prosecutor in a pending prosecution.  The courts have always viewed *Pitchess* "against the larger background" of the prosecution's constitutional *Brady* obligations. (*Mooc, supra,* 26 Cal.4th at p. 1225.)  We would do no more here, by finding no *Pitchess* violation in a procedure that is consonant with *Brady* obligations and that does not involve a prosecutor's perusal of any information in an officer's personnel file.  For these reasons, I would affirm this aspect of the trial court's preliminary injunction.

In all other respects, I concur with the views expressed in the majority opinion.


GRIMES, J.


16